J-A29036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: TIMOTHY PETERMAN     :     IN THE SUPERIOR COURT OF
    :           PENNSYLVANIA
    :
APPEAL OF: TIMOTHY PETERMAN     :
    :
    :
    :
    :
    :
    :     No. 258 WDA 2021

Appeal from the Order Entered January 21, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-MD-0000823-2020

BEFORE:    BENDER, P.J.E., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:        **FILED: JANUARY 12, 2022**

Timothy and Tammy Peterman (the Petermans) appeal from the order

entered in the Court of Common Pleas of Blair County (trial court) denying in

part their appeal of the private criminal complaint they filed against Brad

Confer (Confer) concerning the death of their son Zachary Peterman

(Decedent) in a motorcycle accident in which they alleged charges of Homicide

by Vehicle, Recklessly Endangering Another Person (REAP), Overtaking a

Vehicle on the Right (OVR), Speeding, and Reckless Driving.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 P.S. § 3732, 18 Pa.C.S. § 2705, 75 P.S. §§ 3304, 3362 and 3736.

The trial court granted their appeal as to the bringing of the Reckless Driving charge only but denied it with respect to all remaining charges. On appeal, the Petermans challenge the trial court's decision concerning the REAP and OVR charges. The Commonwealth also contests the court's order as to the Reckless Driving offense.[2] We affirm.

## I.

## A.

The subject accident occurred on June 1, 2019, at 1:30 p.m. when the Decedent lost control of his motorcycle while negotiating a mostly blind right curve in the roadway while travelling northbound at approximately 76 miles per hour (mph), 36 miles per hour above the posted speed limit. The evidence showed that the Decedent's motorcycle fell to its side as the Decedent slid along the roadway before he crashed into a guard rail and sustained injuries leading to his death. The fatal accident was precipitated by an incident involving the Decedent and Confer, who was also travelling northbound on the roadway on his motorcycle. Confer had recognized the Decedent as the ex-

---

[2] Because it did not file a cross-appeal, the Commonwealth's contention that the trial court abused its discretion in allowing the private complaint to go forward involving the reckless driving charge is not before us. **See Goodrich v. Luzerne Apparel Mfg. Corp.**, 514 A.2d 188, 189 (Pa. Super. 1986) ("Issues raised in the [Defendants' Brief] will not be considered. If these parties were aggrieved by the trial court's order, they could have appealed separately or could have joined in appellants' appeal. Pa.R.A.P. 501, 512. Since they did neither, issues raised by them will not be considered.").

fiancé of his daughter, Samantha Kimberling. The Decedent was 27 years-old at the time and was riding along side of his friend Tyler Wray (Wray) when the accident occurred.

Pennsylvania State Police (PSP) Officer Justin Roland responded to the scene and interviewed several eyewitnesses to the accident.[3] Confer approached the officer and relayed that he knew the Decedent and had information regarding the crash. Confer indicated that as he rode north on the roadway and was stopped at a red traffic light, he heard an individual yelling at him from behind and revving his motorcycle engine. Confer observed that the Decedent and Wray were behind him and that all of the vehicles stopped at the traffic light proceeded forward when the light turned green. Confer recounted that the Decedent crossed the double yellow line in order to pass him on the left. The Decedent then braked and swerved in front of him, cutting him off. Confer passed the Decedent by moving into the right fog lane and he sped up past the Decedent, who was visible in his rearview mirror only for a short period of time. When Confer circled back, he came upon the crash scene. Confer advised Officer Roland that his motorcycle never made contact with the Decedent and that he was attempting to move away

_____

[3] Investigators also arrived to take measurements and photographs and to gather other evidence to prepare an accident reconstruction report.

from him. Police inspection of Confer's motorcycle revealed no evidence or markings indicating that he made any contact with the Decedent's motorcycle.

In a follow-up interview,[4] Confer explained that he knew the Decedent through his daughter Kimberling, and that the couple had briefly resided with him before they ended their relationship. Although the Decedent had "anger issues," Confer generally liked him and had ridden motorcycles with him in the past. (PSP General Offense Report, 10/14/20, at 13). Confer provided an account of the incident consistent with his initial interview and added that when the traffic light turned green, he extended his middle finger to the Decedent before the Decedent passed him.

Wray recounted that the Decedent pointed Confer out as they approached the red light and revved the engine of his motorcycle. The Decedent then crossed the double yellow line to pass Confer and cut over in front of him. Confer swerved his motorcycle towards the Decedent and both vehicles sped away and crested a hill. Wray followed the men and stopped when he saw the Decedent laying in the roadway.

In his follow-up interview, Wray provided an account consistent with his initial statement and added that he and the Decedent had been connected by blue tooth headphones as they rode. The Decedent stated two things before

---

[4] Officer Roland interviewed Confer, Wray and witness Diana Krebs (Krebs) again in June 2019.

- 4 -

the crash: "I'm gonna pass him" and "Oh Fuck." (**Id.**). Wray also indicated that both the Decedent and Confer passed a vehicle travelling in front of them by crossing the double yellow line but that he stayed behind the vehicle and did not pass it.

Krebs relayed to Officer Roland that she was delivering mail in her vehicle and was completely off of the roadway at the time of the accident. Krebs heard loud motorcycles approach her vehicle from behind and observed two motorcycles pass by her at a high rate of speed and a third motorcycle slide along the roadway. Krebs saw the Decedent slide along the road behind his motorcycle and hit the guard rail, causing his helmet to fly off his head. The Decedent then slid under the guard rail before he was thrown back onto the road. Krebs attempted to render aid to the Decedent along with Wray. In a follow-up interview, Krebs again relayed that two motorcycles passed her and that the Decedent's motorcycle slid past her. She also recounted that Wray was repeatedly yelling the Decedent's name.

Jackie and Todd Mertiff reside near the accident site and Ms. Mertiff heard loud motorcycles and metal scraping and observed the Decedent slide along the roadway and impact the guard rail. She called 911 and for her husband, who had also heard loud, seemingly fast motorcycles and a scraping sound. Mr. Mertiff observed Confer pass the Decedent and the Decedent's motorcycle slide to the ground.

In October 2019, Officer Roland met with Krebs and the then-District Attorney, Richard A. Consiglio, at the accident scene. A mostly blind right curve leads north downhill towards the crash scene, with no shoulder area after the right fog lane. Krebs explained that she always parks off the roadway while delivering mail at this location, "because of the curve and the excessive speeds people travel on the roadway." (*Id.* at 23). The accident reconstruction report calculated the speed of the Decedent's motorcycle when he lost control at approximately 76 mph in a 40 mph zone.

Officer Roland and DA Consiglio conferred about potential charges to bring against Confer, including REAP. Officer Roland recommended: "this incident [should] be closed as unfounded for Reckless Endangerment. I do not believe there is enough evidence to distinguish between any particular rider for criminal charges. I, with the approval of my supervisors believe this to be a traffic accident. I recommend that Confer be charged for violation of PAVC 3361 Driving Vehicle at Safe Speed and PAVC 3714 Careless Driving." (*Id.*). The PSP filed these two charges against Confer in accordance with Officer Roland's recommendation.

**B.**

The Petermans, acting *pro se*, filed a private criminal complaint on December 19, 2019, petitioning the Commonwealth to bring the aforementioned charges against Confer, including REAP, Reckless Driving and OVR. The complaint averred: "it is known that [Confer and the Decedent]

disliked each other as a result of the failed engagement" and that Confer "engaged his middle finger in an obscene gesture towards the Victim Peterman" as both parties revved the engines of their motorcycles and proceeded northbound at high rates of speed. (Affidavit of Probable Cause, 12/19/19, at 1). The Petermans alleged that Confer's conduct during the incident resulted in the motorcycle crash and the death of their son. (***See id.*** at 3).

On February 6, 2020, DA Consiglio disapproved the Petermans' private criminal complaint, explaining:

> The attached private criminal complaint is disapproved for more than one reason.
>
> The charges of Homicide by Vehicle and Recklessly Endangering Another Person have no prosecutorial merit. The same has been determined by the undersigned after investigation of the incident, including the review of all reports, viewing the scene, interviewing witnesses, and viewing various taped recordings of statements by witnesses.
>
> In addition, the State Police have already charged the defendant, Brad Confer, with the summary offenses of Driving at Safe Speed (75 Pa.C.S.A. 3361), and Careless Driving (75 Pa.C.S.A. 3314). The filing of those two charges make the summary charges requested in the private criminal complaint moot.
>
> Further, it is the policy of the District Attorney's Office not to pursue private complaints when the police authorities have already filed charges in connection therewith and the undersigned determines that the charges filed by the State Police are appropriate.

(DA Consiglio Disapproval Letter, 2/06/20).

In an accompanying letter to the PSP, DA Consiglio reiterated his conclusion after his review of all the evidence in this case that the charges filed by the police were appropriate. (**See** Letter to Sergeant Jesse Moyer, 2/06/20).

## C.

The Petermans filed the underlying petition to appeal the denial of the private criminal complaint in the trial court in July 2020 and the court held oral argument at which the Petermans were represented by counsel on October 14, 2020.[5] At the hearing, the new District Attorney, Peter Weeks, had not yet received the disapproval letter authored by DA Consiglio and he indicated his understanding that the private criminal complaint was denied for more than one reason but that: "I will defer to the reasons set forth by Attorney Consiglio, and I will wait until I get that document." (N.T. Hearing, 10/14/20, at 14). District Attorney Weeks also stated that in speaking with DA Consiglio, his position was that "he and the State Police met several times and reviewed the investigation and came to the conclusion that the summary charges that they filed were the appropriate charges, and that a private criminal complaint as a matter of policy should not upset that determination. I will defer to the language used by Attorney Consiglio in the denial." (**Id.** at

---

[5] In the interim, the Petermans filed a second private criminal complaint before learning that the appropriate procedure was to appeal the first complaint for which they retained counsel.

20-21). He also explained that the charging decision against Confer was a collaborative effort where "the State Police met with Attorney Consiglio and he went out to the scene. He went to the barracks. They came here. There was a lot of back-and-forth. Attorney Consiglio interviewed the different investigators, and then a joint decision was reached on what charges to be filed." (*Id.* at 23).

The trial court took the matter under advisement and left the record open to receive the disapproval letter. The court issued its Opinion and Order granting the Petermans' petition as to the Reckless Driving charge only and denying their request as to all remaining charges on January 21, 2021. The trial court found that DA Consiglio did not abuse his discretion concerning the majority of the alleged charges, and that the private criminal complaint was denied "on a policy reason as to the homicide by vehicle and REAP charges, and a facially stated hybrid of fact and policy as to the summary offenses." (Trial Court Opinion, 1/21/21, at 31). However, the court concluded that DA Consiglio did abuse his discretion as to the summary offense of Reckless Driving, which he denied "either based on a policy for which the court can find no support in the law, or a policy which was a thin veneer over fact and a deferral of his responsibility as the ultimate decision-maker about whether or not to bring charges in Blair County." (*Id.* at 32). The Petermans timely appealed and they and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

## A.

On appeal, the Petermans contest the trial court's finding that DA Consiglio properly disapproved the REAP and OVR charges.[6] They contend that the purported policy basis provided by DA Consiglio for declining to prosecute these charges was arbitrary and pretextual, and that there was no reasonable basis for the trial court to sustain the "nonsensical proffered policy determination . . . [made] in bad faith." (Petermans' Brief, at 17). The Petermans point to the excessive speed at which Confer was travelling in close proximity to other vehicles at the time of the crash, and Confer's admission

---

[6] The REAP statute provides: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. The OVR statute provides in relevant part:

**(a) General rule.**—The driver of a vehicle may overtake and pass upon the right of another vehicle only under one of the following conditions:

\* \* \*

(2) Upon a roadway with unobstructed pavement of sufficient width for two or more lines of vehicles moving lawfully in the direction being traveled by the overtaken vehicle, except that such movement shall not be made by driving off the roadway.

**(b) Limitation.**—No passing movement under this section shall be made unless the movement can be made in safety.

75 Pa.C.S. § 3304(a)(2), (b).

that he passed the Decedent on the right to support its position that they "would have unquestionably prevailed" if the trial court had employed the appropriate *de novo* standard of review instead of a differential abuse of discretion standard. (*Id.* at 17).[7] The Petermans maintain that DA Consiglio's "decision boils down solely to the assertion by the PSP Trooper [Roland] that he could not distinguish between any particular rider for criminal charges" which is arbitrary and pretextual given the "mere fact that all three riders may have been engaging in reckless conduct does not obviate the criminal responsibility of any individual." (*Id.* at 11-12).

The Commonwealth responds by contending that the appropriate standard is abuse of discretion and that the court properly denied the Peterman's appeal as to DA Consiglio's disapproval of the REAP and OVR

---

[7]

> [W]hen the district attorney disapproves a private criminal complaint solely on the basis of legal conclusions, the trial court undertakes *de novo* review of the matter. Thereafter, the appellate court will review the trial court's decision for an error of law. . . . [In contrast], **when the district attorney disapproves a private criminal complaint on wholly policy considerations, or on a hybrid of legal and policy considerations, the trial court's standard of review of the district attorney's decision is abuse of discretion**. This deferential standard recognizes the limitations on judicial power to interfere with the district attorney's discretion in these kinds of decisions.

*In re Miles*, 170 A.3d 530, 534–35 (Pa. Super. 2017) (citation omitted; emphasis added).

charges. However, it maintains that in rendering its decision on the Reckless Driving offense,[8] the court improperly substituted it judgment for that of DA Consiglio and misinterpreted his disapproval letter.

**B.**

We begin by noting that "a private criminal complaint must at the outset set forth a *prima facie* case of criminal conduct." ***In re Wilson***, 879 A.2d 199, 211 (Pa. Super. 2005) (citation omitted). "The district attorney must investigate the allegations of a properly drafted complaint to enable the exercise of his discretion concerning whether to approve or disapprove the complaint." ***Id.*** (citation omitted). "If the Commonwealth disapproves a private criminal complaint, the complainant can petition the Court of Common Pleas for review." ***Kundratic v. Luzerne Cty. Dist. Attorney's Office***, 261 A.3d 563, 565 (Pa. Super. 2021); ***see also*** Pa.R.Crim.P. 506(B)(2).

> **A district attorney's conclusion that a case lacks prosecutorial merit is a 'policy determination' subject to the trial court's review for an abuse of discretion**.
>
> This deferential standard recognizes the limitations on judicial power to interfere with the district attorney's discretion in these kinds of decisions. Thereafter, the appellate court will review the trial court's decision for an abuse of discretion, in keeping with the settled principles of appellate review of discretionary matters. **The district attorney's decision not to prosecute a criminal complaint for reasons including policy matters carries a presumption of good faith and soundness**.

---

[8] The Vehicle Code provides that "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S. § 3736(a).

> **The complainant must create a record that demonstrates the contrary**. Thus, the appropriate scope of review in policy-declination cases is limited to whether the trial court misapprehended or misinterpreted the district attorney's decision and/or, without a legitimate basis in the record, substituted its judgment for that of the district attorney. We will not disturb the trial court's decision unless the record contains no reasonable grounds for the court's decision, or the court relied on rules of law that were palpably wrong or inapplicable. Otherwise, the trial court's decision must stand, even if the appellate court would be inclined to decide the case differently.
>
> **The private criminal complainant has the burden to prove the district attorney abused his discretion, and that burden is a heavy one**. In the Rule 506 petition for review, the private criminal complainant must demonstrate **the district attorney's decision amounted to bad faith, fraud or unconstitutionality**. The complainant must do more than merely assert the district attorney's decision is flawed in these regards. The complainant **must show the facts of the case lead only to the conclusion that the district attorney's decision was patently discriminatory, arbitrary or pretextual, and therefore, not in the public interest**. In the absence of such evidence, the trial court cannot presume to supervise the district attorney's exercise of prosecutorial discretion, and should leave the district attorney's decision undisturbed.

*Kundratic*, *supra* at 565 (emphases added; citation omitted); *see also In re Private Criminal Complaints of Rafferty*, 969 A.2d 578, 582 (Pa. Super. 2009) (stating that this Court has consistently held that a determination that a case lacks prosecutorial merit is a policy determination).

"The district attorney is permitted to exercise sound discretion to refrain from proceeding in a criminal case whenever he, in good faith, thinks that the prosecution would not serve the best interests of the state." *In re Miles*, *supra* at 535 (citation omitted). "This decision not to prosecute may be

implemented by the district attorney's refusal to approve the private criminal complaint at the outset." *Id.* (citation omitted).

## C.

In this case, DA Consiglio's disapproval letter clearly explains that his office would not pursue the requested charges on the policy grounds of lack of prosecutorial merit and/or because it was the general policy of the DA's Office to decline to pursue the allegations raised in private criminal complaints under circumstances where the police authorities have already filed charges that the DA's office has deemed appropriate, as was the case here.[9]

Although the Petermans characterize DA Consiglio's stated policy reasons for denying the complaint as "illusory" and "bogus," this claim lacks any support in the record. (*See* Petermans' Brief, at 17-18). The Petermans claim that the DA's decision was solely based on a single isolated statement made by Officer Roland indicating that he could not distinguish between any particular rider for criminal charges. However, DA Consiglio made no mention of this statement in his disapproval letter or accompanying letter to the PSP. Moreover, it is clear from the record that both Officer Roland and DA Consiglio did not absolve Confer from criminal responsibility for his conduct simply

---

[9] The DA also found the request for the filing of summary traffic offenses moot as Confer had already been charged with the similar offenses of Speeding and Careless Driving, obviating the need for redundant charges.

because the Decedent was also driving unsafely, as they approved charges against Confer for Speeding and Careless Driving.

The record also reflects that DA Consiglio made his policy determination not to bring additional charges against Confer after meeting with Officer Roland and eyewitness Krebs at the crash scene, conferring with Officer Roland as to the possible charges to bring against Confer, and considering all available evidence including an accident reconstruction analysis of the crash. The evidence showed that at the time of the crash, the Decedent was travelling at an excessive speed of 76 mph in a 40 mph zone while negotiating a dangerous blind curve in the road and that his motorcycle lacked any markings indicating that Confer had made contact with it. Furthermore, the DA had already made a charging determination and had authorized the state police to bring two particular charges, which had already been filed at the time the Petermans filed their complaint. Thus, the appropriate standard of review was an abuse of discretion rather than *de novo*. **See Kundratic**, **supra** at 565. Under this standard, the petitioner has the very heavy burden of demonstrating that the DA's decision was patently discriminatory, arbitrary or pretextual and, therefore, not in the public interest. **See id**.

Here, as discussed above, the Petermans have made only generalized unsupported allegations that DA Consiglio's decision was pretextual and "bogus" without reference to any actual evidence in the record showing any indicia of bias or unfairness on the part of the DA or PSP in bringing only two

charges against Confer. Instead, the record reflects that the PSP conducted a thorough investigation of the crash and filed charges based on Officer Roland's informed assessment that this was a tragic traffic accident.

The DA, likewise, carefully weighed the potential charges against Confer and made his decision to disapprove the private criminal complaint after careful review of the crash scene, witness statements and accident reconstruction data. Thus, we agree with the trial court that the DA acted within his discretion in disapproving the Petermans' complaint as to the REAP and OVR charges.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  01/12/2022